UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WILFREDO ORTEGA,**<br><br>    Plaintiff,<br><br>    v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>    Defendant. | Civ. No. 2:11-06303 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiff Wilfredo Ortega, a former warehouseman, brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") concluding that Ortega was not under a disability from June 21, 2008 through July 19, 2010, and denying Ortega's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits. For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

      Ortega applied for benefits in August 2008. Administrative Transcript ("Tr.") 19. His claims were denied on November 25, 2008, and upon reconsideration on April 9, 2009. *Id.* Ortega requested a hearing, which took place on June 23, 2010. *Id.* At the hearing, Ortega testified that he was suffering from depression and problems with his spine, that he could stand for 20 minutes and sit for 30 minutes, and that he could lift ten pounds. *Id.* at 38-41. One month later, ALJ James Andres issued a written decision concluding that from June 21, 2008 through July 19, 2010, the alleged dates of disability, Ortega could perform light work, which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). The Appeals Council denied review. Tr. at 1.

1

The record evaluated by the ALJ and the Appeals Council reflects that in 2008, Ortega was diagnosed with non-Hodgkins lymphoma, Hepatitis B, and a fracture of his L5 vertebra. *Id.* at 445. The fracture appears to have been caused by the lymphoma. Ortega was diagnosed with depression in 2009. *Id.* at 704. Also in 2009, a sleep study documented "significant daytime sleepiness." *Id.* at 706.

### A.   Doctors Appointments

On September 18, 2008, Ortega saw his oncologist, Dr. Mecide Gharibo. He reported improved back pain following his cancer treatments. *Id.* at 445. Roughly one month later, on October 10, 2008, Ortega "denie[d] pain or discomfort in the rest of his muscle, joints, or ribs at the present time." *Id.* at 462. On October 21, 2008, Ortega reported "occasional midthoracic back pain as well as low-back pain [that was] much improved." *Id.* at 466. Six weeks after that, Ortega told Dr. Gharibo that he was still feeling lower leg and feet pain, but he "denie[d] pain or discomfort in muscles, joints, or ribs." *Id.* at 643. On January 23, 2009 Ortega reported "lower back pain on rare occasions." *Id.* at 720. That same month, Ortega was diagnosed with depression and started on antidepressants. *Id.* at 704. Eleven months later, results of a sleep study performed by Dr. Jagadeeshan Sunderram confirmed that Ortega had "significant daytime sleepiness." *Id.* at 706.

### B.   RFC Assessments

On several occasions between November 24, 2008 and March 12, 2010, doctors assessed Ortega's "residual functional capacity" ("RFC"), essentially his ability to work. The first physician to perform an assessment was Dr. Nawal Abdelmessieh, a medical consultant who apparently never treated Ortega. Dr. Abdelmessieh's first assessment, dated on November 24, 2008, concluded that Ortega was unable to lift more than ten pounds, stand for more than two hours in an eight-hour workday, or sit for more than 6 hours in an eight hour workday. *Id.* at 521. Dr. Abdelmessieh's second RFC assessment, also performed on November 24, 2008, considered how Ortega would progress over the course of a year. In that second assessment, Dr. Abdelmessieh predicted that within twelve months, Ortega would be able to lift 20 pounds occasionally and 10 pounds frequently, and that Ortega would not be able to sit or stand for more than six hours in an eight-hour workday. *Id.* at 529.

Ortega's treating physicians also performed RFC assessments. On March 12, 2010, Ortega's psychiatrist, Dr. Lara, concluded that Ortega's "memory [was] mildly impaired from chemotherapy and depression," and that Ortega's ability to

maintain attention/concentration was "poor or none." *Id.* at 716, 718. It was Dr. Lara's opinion that Ortega was unable to work despite having "made some progress in recovery from major depression." *Id.* at 704.

On January 26, 2010, Ortega's oncologist, Dr. Gharibo, concluded that Ortega was "unable to return to work [due to] secondary side effects from his treatment regimens." *Id.* at 711. Dr. Gharibo also concluded that Ortega had "permanent back damage due to his cancer destroying the vertebral bodies and causing lower extremity weakness." *Id.* at 712. Finally, Dr. Gharibo concluded that Ortega could lift a maximum of ten pounds, could stand for 30 minutes during an eight hour workday, and could sit without interruption for 30 minutes at a time. *Id*. at 713.

## II.  LEGAL STANDARDS

### A.  The Five-Step Sequential Analysis

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* § 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A ("Part A"). If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the RFC to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

### B. Standard of Review

For purposes of this appeal, the court's review of legal issues is plenary. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The ALJ's factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence supports the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

The substantial evidence standard is highly deferential. "If a limitation is medically supported but is also contradicted by other evidence, the ALJ can choose to credit portions of the existing evidence and disregard others." *Seabon v. Comm'r of Soc. Sec. Admin.*, No. 10-2268, 2011 WL 3425508, at *8 (D.N.J. Aug. 4, 2011). "The ALJ cannot, however, 'reject evidence for no reason or for the wrong reason.'" *Id.* (internal citation omitted).

In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider the entire record. *Reefer v. Barnhart,* 326 F.3d 376, 379 (3d Cir. 2003). "The court must give deference to the administrative findings and may not 'weigh the evidence or substitute its conclusions for those of the fact-finder.'" *Allen v. Comm'r of Social Sec.*, No. 10-2614, 2011 WL 1321985, at *7 (D.N.J. 2011) (internal citation omitted).

## III. DISCUSSION

At step one, the ALJ found that Ortega had not engaged in substantial gainful activity since June 21, 2008, the alleged onset date of Ortega's disability. Tr. 21. In challenging the ALJ's ultimate determination that he was "not disabled" from June 21, 2008 through July 19, 2010, Ortega argues that the ALJ committed the following errors at steps two through five: (1) at step two the ALJ did not find that Ortega's Hepatitis B, sleep apnea, and depression were "severe impairments"; (2) at step three the ALJ did not find that Ortega's impairments, alone or in combination, met or equalled any of the impairments listed in Part A; (3) at step four the ALJ incorrectly determined that Ortega could perform light work; (4) at step five the ALJ failed to solicit vocational testimony about Ortega's mental impairments. Each of these challenges will be addressed in turn.

### A.     Step Two

At step two, plaintiffs bear the burden to demonstrate a severe "impairment" or "combination of impairments."  20 C.F.R. 404.1520(a)(4)(ii).  "[A]n impairment is severe only if it significantly limits the claimant's physical or mental ability to do 'basic work activities.'"  *Salles v. Comm'r of Social Sec. Admin*, 229 Fed. Appx. 140, 144 (3d Cir. 2007).  "[O]bjective medical diagnoses alone are insufficient to establish severity at step two; a claimant must also present evidence that these limitations significantly limited her ability to do basic work activities or impaired her capacity to cope with the mental demands of working."  *Tollivers v. Astrue*, No. 11-6358, 2013 WL 427096, at *4 (D.N.J. Feb. 1, 2013).  Here, the ALJ concluded that Ortega had two severe impairments: a history of non-Hodgkins lymphoma and back disorders.  Tr. at 21.  Ortega argues that he has three additional severe impairments: Hepatitis B, sleep apnea, and depression.  Substantial evidence supports the conclusion that none of these impairments were severe.

<u>Hepatitis B.</u>     Ortega does not identify any significant limitations he experienced due to Hepatitis B, and the Court cannot discern any from the record.  Accordingly, substantial evidence supports the conclusion that Hepatitis B was not a severe impairment.

<u>Sleep Apnea.</u>     While Ortega argues that his sleep apnea was a severe impairment, he did not demonstrate that his sleep problems significantly limited his ability to perform basic work activities.  The record contains a 2009 sleep study documenting "significant daytime sleepiness," Tr. 706, but the study says nothing about Ortega's ability to work.  While Ortega testified that his sleep problems affected his concentration and memory, *id. at* 46,  the ALJ found that Ortega had exaggerated the limiting effects of his difficulties with concentration.  The Court finds that the ALJ's determination was supported by substantial evidence.

<u>Depression.</u>     Finally, Ortega argues that his depression was a severe impairment.  The ALJ noted that Ortega was diagnosed with depression, but he also noted that the record was "devoid of any longitudinal treatment notes documenting the severity of [Ortega's depression]." *Id.* at 25.  As Ortega failed to meet his burden to establish the severity of his depression, substantial evidence supports the ALJ's step two analysis.

### B. Step Three

At step three, the question is whether Ortega's impairments, alone or in combination, meet or equal any of the impairments listed in Part A. 20 C.F.R. § 404.1520(d). Ortega argues that the ALJ made two mistakes at step three. First, the ALJ concluded that Ortega's impairments did not match any of the impairments listed in Part A. Second, the ALJ concluded that Ortega's impairments, when considered alone or in combination, were not medically equal to any of the Part A impairments. A review of the ALJ's decision makes clear that he considered Ortega's impairments, individually and collectively. Tr. 21-25. Nothing suggests that Ortega has an impairment listed in Part A, or that his impairments, either alone or in combination, were medically equal to a listing in Part A. Accordingly, substantial evidence supports the ALJ's step three decision.

### C. Step Four

At step four, the ALJ considers whether "despite any severe impairment, the claimant retains the RFC to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (internal quotation and citation omitted).

The ALJ determined that Ortega could not perform his past work as a warehouseman. Tr. 26. But the ALJ nevertheless found that Ortega had the RFC to perform light work. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing." 20 C.F.R. §§ 404.1567(b), 416.967(b). The Court finds that the ALJ's step four analysis was supported by substantial evidence.

In determining that Ortega could perform light work, the ALJ relied heavily on two sets of documents. First, he relied on reports from late 2008 and early 2009 documenting improved back pain. Tr. 22-25. Second, he relied on a November 24, 2008 RFC assessment from Dr. Abdelmessieh. The assessment predicted that within one year Ortega would be able to lift 20 pounds occasionally and ten pounds frequently, and that Ortega would be able to sit for six hours in an eight-hour workday. *Id.* at 529. Dr. Abdelmessieh's prediction was consistent with light work. *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").

Ortega argues that the ALJ failed to give sufficient weight to a 2010 RFC assessment performed by Ortega's oncologist, Dr. Gharibo. In that assessment, Dr. Gharibo concluded that Ortega had "permanent back damage due to his cancer destroying the vertebral bodies and causing lower extremity weakness," and that Ortega was "unable to return to work [due to] secondary side effects from his treatment regimens." *Id.* at 711. Dr. Gharibo found that Ortega could lift a maximum of ten pounds, could stand for only 30 minutes during an eight hour workday, and could only sit without interruption for 30 minutes at a time. *Id.* at 713. This assessment was consistent with an ability to perform sedentary work. *See* 20 C.F.R. § 404.1567 ("Sedentary work involves lifting no more than 10 pounds at a time . . . ."). The ALJ discounted Dr. Gharibo's assessment because it was "not supported by any of the organic findings" and because it was "grossly inconsistent with [Dr. Gharibo's] own findings during the December 2008 and January 2009 physical examinations." *Id*. at 25.

The ALJ was required to consider Dr. Gharibo's 2010 assessment, but he did not have to accept it. Because the assessment did not reference any examinations, tests, or medical reports, the ALJ was not required to weigh the assessment heavily in his analysis. *See* 20 C.F.R. 404.1527 ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Additionally, just because Dr. Gharibo's assessment was more recent than older evidence does not mean that the ALJ had to privilege it over the older evidence. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (proper for ALJ to rely on records that were "a few years old"); *Dahlhaus v. Astrue*, No. 11-4811, No. 11-4811, 2012 WL 3283532, at *10 (D.N.J. Aug. 10, 2012) ("[A] two-year lapse between [a doctor's] assessment and the ALJ's reliance upon it is inconsequential to the substantiality of [the doctor's] assessment for evidentiary purposes."). While a different factfinder might have given more weight to Dr. Gharibo's 2010 assessment, the question for this Court is whether substantial evidence supports the ALJ's decision that Ortega could perform light work. The Court finds that substantial evidence supports the ALJ's decision that Ortega could perform light work.[1]

---

[1] Ortega contends that the ALJ's step four analysis failed to consider his subjective experience of pain. In fact, the ALJ referred to Ortega's complaints of pain throughout his decision. *See* Tr. 22-24. The ALJ accepted that Ortega experienced back pain, but he concluded, based on the objective medical evidence, that the pain was not as limiting as Ortega claimed. *Id.*at 24; *see also* 20 C.F.R. § 404.1529 ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."). This finding was supported by substantial evidence.

### D. Step Five

At step five, the ALJ must demonstrate that a claimant can perform jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Ortega argues that the ALJ failed to meet this burden because the ALJ failed to solicit vocational testimony about Ortega's non-exertional impairments. Ortega is incorrect.

Under Social Security regulations, impairments can be exertional or non-exertional. Exertional impairments relate to activities such as standing, walking, and lifting. 20 C.F.R. § 404.1569a. All other impairments are non-exertional. *Id.* When a claimant has only exertional impairments, the step five determination can be made using medical-vocation guidelines known as "grids." *Sykes v. Apfel*, 228 F.3d 259, 269 (3d Cir. 2000). In *Sykes v. Apfel*, the plaintiff suffered from severe exertional and non-exertional limitations. Using only the grids, an ALJ found that the plaintiff could perform jobs that existed in significant number in the national economy. The Third Circuit held that the presence of the severe non-exertional limitation required a step five analysis that incorporated the testimony of a vocational expert or "similar evidence." *Id.* at 273. But the Third Circuit did not hold that vocational testimony was required where a plaintiff's non-exertional impairments were not severe. *See Marquez v. Astrue*, No. 10-463, 2011 WL 835604, at *9 (D.N.J. Mar. 4, 2011) (*Sykes* is "inapplicable to a case where the claimant suffers only from a non-severe psychological impairment.").

Ortega did not suffer from any severe non-exertional limitations. Accordingly, *Sykes* did not require the ALJ to solicit expert vocational testimony in making his step five decision.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED.**

                                       /s/ William J. Martini
                              **WILLIAM J. MARTINI, U.S.D.J.**

**Date: February 20, 2012**